UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILLIAM VON FRIEWALDE, DAVE HARTMAN, MARK COMPAS, and ROBERT BEVINS, <br> Plaintiffs, <br><br> v. <br><br> BOEING AEROSPACE OPERATIONS, INC., <br> Defendant. | § § § § § § § § § § § | CAUSE NO. SA-06-CA-236-OG |

## ORDER

Before the Court is plaintiff Edward Montelongo's amended application for attorney's fees. (Docket no. 126.) The Fifth Circuit affirmed this Court's dismissal of 78 of the 80 plaintiffs in this FLSA action. Von Friewalde v. Boeing Aerospace Operations, Inc., 339 Fed.Appx. 448, 461 (5th Cir. 2009). The court remanded for trial the individual claims of opt-in plaintiffs Montelongo and Jesus Lozano. Id.

### I. Background

On March 17, 2006, four plaintiffs filed a putative Fair Labor Standards Act (FLSA) collective action. In the original complaint, the named plaintiffs alleged that Boeing violated the FLSA in three ways: (1) instituting a 9-day 80-hour work schedule (the "9/80 Program"); (2) requiring employees to work uncompensated overtime before and after their scheduled shifts; and (3) requiring employees to work through scheduled breaks. (Docket no. 1.) The first and third claims were patently defective because the Department of Labor and the FLSA specifically permit a 9/80 Program and the FLSA does not require paid breaks. On July 11, 2007, plaintiffs voluntarily dismissed these two claims by filing their Third Amended Collective Action Complaint. (Docket no. 30.)

On June 4, 2007, notice was sent to approximately 1600 present and former Boeing employees, at Boeing's expense and with Boeing's agreement, but subject to Boeing's right to seek decertification. Plaintiffs were therefore not required to move for the initial certification of a collective action, although Boeing later moved to decertify in light of the individualized nature of each plaintiff's claim for overtime compensation. (Docket no. 44.) Only 76 additional plaintiffs opted in, including Montelongo and Lozano. The success rate of the notices thus was less than five percent.

On March 10, 2008, the Court granted Boeing's motion for summary judgment, entering a take-noting judgment. (Docket no. 62.) Plaintiffs appealed. The Fifth Circuit first concluded that only some of the activities that plaintiffs sought overtime for were compensable as a matter of law if actually proven to involve more than an *de minimis* amount of time. Von Friewalde, 339 Fed.Appx. at 454-55. The court then determined that the claims of one named plaintiff and 74 of the 76 opt-in plaintiffs failed because they produced no evidence in support of their claims. Id. at 456. The court then reviewed the evidence of the three named plaintiffs who submitted evidence and concluded that they "failed to present sufficient evidence to permit a reasonable factfinder to conclude that they had met their burden under the FLSA" because their claims rested upon an amount of unpaid overtime that was *de minimis* as a matter of law, and because they admitted that on the vast majority of occasions, they were paid when they notified their superiors that they had worked overtime. Id. at 458-59. As for Montelongo and Lozano, the Fifth Circuit remanded their individual claims for trial because, unlike the other plaintiffs, they had presented enough evidence to raise fact issues as to whether they performed uncompensated overtime about which Boeing had actual or constructive knowledge. Id. at 461.

Following remand, Montelongo and Lozano presented for the first time their calculations of unpaid overtime each claimed was at issue. Montelongo claimed only $1968.75 in unpaid overtime. (Docket no. 127, ex. C.) Boeing made its Offer of Judgment to Montelongo of $3,957.50, double Montelongo's actual claimed overtime, because Montelongo had alleged that Boeing's conduct was "willful" under the FLSA. While Boeing denied any violation of the FLSA, willful or otherwise (docket no. 93, ex. A), Boeing made the offer to avoid protracted and expensive litigation over a $4,000 demand. See Docket no. 127 at n. 3. Montelongo accepted Boeing's offer of judgment on November 19, 2009. (Docket no. 93). Lozano rejected Boeing's offer of judgment.

Montelongo and Lozano filed their first motion for attorney's fees as prevailing parties on December 8, 2009. (Docket no. 98.) They based their claimed status as prevailing parties on the Fifth Circuit's remand of their claims for trial, and Montelongo's acceptance of the offer of judgment. Montelongo and Lozano requested an award of $160,000 in attorney's fees and costs representing their attorneys' work on the entire case as it related to all 80 plaintiffs. The Court denied the motion without prejudice in a February 19, 2010 order. In that order the Court stated:

> As indicated, plaintiffs lost on 78 of 80 claims. A request for $160,000 in attorney's fees and costs obviously bears no rational, reasonable, or *conceivable* relationship to the amount to be recovered by Montelongo, which is less than $4000. See 29 U.S.C. § 216(b) (prevailing party entitled to *reasonable* attorney's fee). As to the 78 dismissed plaintiffs, the request is groundless. As to Montelongo, the request is exorbitant. As to Lozano, the request is premature. The Court will deny the application for attorney's fees without prejudice. Montelongo may re-submit an application for a *reasonable* amount of attorney's fees relating *only* to *his* claim within two weeks of this order.

Docket no. 125 at 3 (emphasis in original).

Montelongo has now submitted an amended application for attorney's fees. (Docket no.

126.) Montelongo's lawyers have not submitted new affidavits or evidence in support of the amended application, but have chosen to rely on the affidavits and billing records attached to the original application. See Docket no. 98. They have eliminated numerous charges from the earlier request but have not indicated in any manner how the hours they continue to claim relate to the successful resolution of the Montelongo matter, leaving the Court to speculate. They now seek attorneys' fees of $62,580 and expenses of $2,042.15, for a total of $64,622.15. Boeing opposes the request. (Docket no. 127.)

## II. Attorneys' fees

Under the FLSA, a prevailing plaintiff is entitled to a "reasonable attorney's fee." 29 U.S.C. § 216(b). The Fifth Circuit uses the lodestar method to calculate an appropriate attorney's fee award under the FLSA. Saizan v. Delta Concrete Products Co., Inc., 448 F.3d 795, 799 (5th Cir. 2006). The lodestar is the product of the number of hours reasonably expended on the litigation by the movant's attorneys and appropriate hourly rate in the community for such work. Id. After calculating the lodestar, the Court may decrease or enhance the amount based on the relative weight of the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). Saizan, 448 F.3d at 800. The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of professional relationship with the client; and (12) awards in similar

4

cases. Johnson, 488 F.2d at 717-19. "[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." Migis v. Pearle Vision, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing Von Clark v. Butler, 916 F.2d 255, 258 (5th Cir. 1990)).

The Supreme Court has made it clear that the most important factor in assessing an attorney's fee is the "degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983); accord Farrar v. Hobby, 506 U.S. 103, 114 (1992). In cases such as the present one where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 440. The hours spent on unsuccessful claims should be excluded, and where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. Id.

Fee applicants bear the burden of establishing appropriate hours and hourly rates and proving they exercised billing judgment. Saizan, 448 F.3d at 799; see also Walker v. City of Mesquite, 313 F.3d 246, 251 (5th Cir. 2002). Billing judgment requires documenting both the hours charged and those not charged as unproductive, excessive, or redundant. Saizan, 448 F.3d at 799.

The $62,580 in attorneys' fees Montelongo seeks is nearly 16 times the amount of his $4000 recovery. That amount is per se excessive. See Migis, 135 F.3d at 1047-48 (remanding an

5

attorney's fee award because it was six and one-half times the amount of damages awarded). Although there is no per se rule of proportionality between the amount of recovery and amount of attorney's fee awarded, Saizan, 448 F.3d at 802, at some point, the ratio between the two can become so great or disproportionate that the court must give due consideration and reduce the fee in light of the result or success obtained. Lewis v. Hurst Orthodontics, PA, 292 F.Supp.2d 908, 913 (W.D. Tex. 2003) (citing Dodge v. Hunt Petroleum Corp., 174 F.Supp.2d 505, 510 (N.D. Tex. 2001)).

Boeing cites Goss v. Killian Oaks House of Learning, 248 F.Supp.2d 1162 (S.D. Fla. 2003) for the proposition that no attorney's fees should be awarded Montelongo. In that case, however, the court found that the suit was frivolous from the outset. Id. at 1169. The Fifth Circuit has already determined that Montelongo presented sufficient evidence to at least raise a fact issue as to whether Boeing violated the FLSA in failing to pay him overtime. Von Friewalde, 339 Fed.Appx. at 460. Thus, the Court cannot find that his claim is frivolous.

### A. Lodestar

**1. Hourly rate.**

To calculate the lodestar, the Court must determine the reasonably hourly rate in the community for similar work. The Court finds that the hourly rates submitted by counsel are unreasonable and higher than the customary fee for such work.

Three lawyers represented plaintiffs. All practice in separate firms. They have filed nearly identical affidavits outlining their experience. Jon Powell and Jason B. Speights handled the case through summary judgment. Philip R. Russ became involved once summary judgment for Boeing had been granted, and he handled the appeal work. Powell has practiced for 12 years.

(Docket no. 98, ex. A.) He is a solo practitioner in the areas of medical malpractice, auto accidents, commercial litigation, product defects, wrongful death, and labor law. Id. Speights has also been in practice for 12 years and is a partner in his law firm. (Id., ex. B.) His firm, of unknown size, has an emphasis in commercial litigation, personal injury, labor law, product defects, and insurance bad faith cases. Id. Russ has been licensed for over 40 years. (Id., ex. C.) He works in a two-lawyer office that engages in the general practice of law with an emphasis on FLSA cases, labor and employment law, commercial civil litigation, antitrust, securities law, and wrongful death. Id. Despite the varying levels of experience, all the lawyers have claimed the same hourly rate, $350 per hour.

The Court takes judicial notice of the Hourly Rates in 2005 Report ("Rate Report") published by the State Bar of Texas on September 21, 2006.[1] The mean hourly rate for all Texas practitioners as of 2005 was $234 per hour and the median or 50th percentile was $215 per hour. Id. at 2. The average and median hourly rates in San Antonio were close to the statewide averages: $231 per hour and $202 per hour respectively. Id. at 26. By area of practice, the average for labor and employment lawyers was $266 per hour with a median of $275 per hour. Id. at 14. However, none of Montelongo's attorneys professed a concentration in labor law, and none are certified by the Texas Board of Legal Specialization in labor and employment law or in any other speciality. The average hourly rates of attorneys with 12 years of experience in solo practice was $225 per hour, and in firms of two to five lawyers was $210 per hour. Id. at 10. The rate for lawyers with over 25 years of experience practicing in two-person firms was $225. Id.

---

[1] http://www.texasbar.com/Template.cfm?Section=Research_and_Analysis&Template=/ContentManagement/ContentDisplay.cfm&ContentID=15888

The Court finds that an hourly rate of $225 represents a reasonable and customary hourly rate in the community for these lawyers with their levels of experience in 2005. In 2009, adjusting for inflation, that rate would be $247.[2]

The customary fee is not the only consideration; the Court should also consider the quality of the legal work. Copper Liquor, Inc. v. Adolph Coors Co., 684 F.2d 1087, 1092 (5th Cir. 1982); Lewis, 292 F.Supp.2d at 909. The quality of the work demonstrated by Powell and Speights was abysmal. To reiterate, the Fifth Circuit dismissed the claims of 75 of the 80 plaintiffs in this case, including a named plaintiff, because they produced no evidence at all in support of their claims. The court stated:

> [W]e conclude that the claims of all those appellants who have not produced any evidence at all, including named appellant Mark Compas and all but two of the opt-in appellants, necessarily fail. Those appellants had numerous opportunities to provide deposition testimony, affidavits, documents, or answers to interrogatories in support of their claims. As it stands, we know nothing of those appellants other than their names and the fact that they were allegedly employed in some unidentified capacity by Boeing . . ..

Von Friewalde, 339 Fed.Appx. at 456 (footnote omitted). The "numerous opportunities" the court refers to were the multiple extensions of the discovery deadline in this case on the plaintiffs' motions. The court stated:

> Appellants had ample time to come forward with evidence in support of their claims, as the deadline for completing discovery was at their requests extended on multiple occasions. In response to Boeing's interrogatories, appellants repeatedly stated that they were "in the process of attempting to determine the requested information and will continue to obtain and supplement this information," yet they never did so.

Id. at n. 5. Despite these numerous opportunities, these attorneys were able to muster exactly *NO*

---

[2] This amount was determined using the inflation calculator at the Federal Reserve Bank of Minneapolis webpage: http://www.minneapolisfed.org/index.cfm.

8

evidence for 94 percent of their plaintiffs, including one of the original four named plaintiffs. In fact, for Lozano, much of his evidence consists of the time records he himself compiled before he opted-in. "[Lozano] was the only appellant to submit any sort of documentary evidence in support of his claim." Id. at 460.[3] The Court is forced to conclude that the quality of the legal work in this case, at least on the part of Powell and Speights, was appalling and inept.[4] Therefore, the Court determines that Powell and Speights should be compensated at the 25th percentile for attorneys in San Antonio in 2005 which is $175 per hour. Rate Report at 26. Adjusting that amount for inflation to 2009 equals an hourly rate of $192.[5]

## 2. Number of hours.

The next factor in the lodestar calculation is the reasonable number of hours expended on the litigation. The total time submitted by the attorneys in their original application for the entire litigation is 445.6 hours, broken down as follows: Powell, 136.5; Speights, 137.3; and Russ, 171.8. In their amended application they seek a total of 178.8 hours, broken down as follows:

---

[3] "Unlike any of the other appellants, Lozano kept track of his time over a three to four year period and submitted spreadsheets to the district court purportedly indicating when he performed and was paid for the overtime and when he was not paid for overtime performed." Von Friewalde, 339 Fed.Appx. at 457. Notice to potential opt-in plaintiffs was mailed in June 2007. (Docket no. 24.) Lozano's last day as a Boeing employee was October 21, 2006. (Docket no. 98, ex. G.) Thus, the three to four years of records he kept of his overtime work were made on his own initiative and not due to any prompting or advice from his lawyers.

[4] For their stellar efforts, plaintiffs' attorneys brazenly sought $155,725 in attorneys' fees representing 445.6 hours of work in their original application. (Docket no. 98.) *Four hundred forty-five point six hours* of work (nearly 56 entire *days*!), and only five of their 80 plaintiffs managed to produce *any* evidence in support of their claims. Powell's and Speights' claim for $155,725 in fees (39 times Montelongo's recovery) is completely divorced from the reality of the result obtained.

[5] This adjustment was again made using the inflation calculator at http://www.minneapolisfed.org/index.cfm.

9

Powell, 39.5; Speights, 42; and Russ, 97.3. In other words, according to the amended application, 40 percent of the work performed in this case (178 of 445 hours) is attributable to only one of 80 plaintiffs.

a. Powell and Speights. Powell and Speights have not demonstrated billing judgment. Despite the fact that they struck, seemingly at random, numerous fee requests in their amended application, they have not provided any documentation at all of hours not charged as unproductive, excessive, or redundant. Nor have they explained at all the significance of the hours they continue to claim. Billing records that are scanty or lack explanatory detail are unacceptable. Leroy v. City of Houston, 831 F.2d 576, 585 (5th Cir. 1988). The court may reduce hours that are too vague to permit meaningful review. Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 326 (5th Cir. 1995). The hours that are not eliminated should be those "reasonably expended on the litigation." Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993).

While it is difficult in a collective action to segregate hours performed for one of several plaintiffs, one thing we all agree on is that work on Montelongo's deposition may be attributed to him. Boeing deposed Montelongo on January 21, 2008. The court reporter's list of appearances by counsel shows that only Boeing's counsel and Powell were present. (Docket no. 127, ex. A.) Although Speights is not listed as appearing at Montelongo's deposition, both Powell and Speights show time entries for January 21, 2008 of 7 hours each. (Docket no. 98, exs. A & B; docket no. 126.) Both entries read: "Prepare for and attend deposition of Edward Montelongo and Robert Bevins." If the court reporter's certificate is accurate, Speights did not even attend Montelongo's deposition and his request for fees in attending that deposition is false. If the certificate is wrong and Speights was actually at Montelongo's deposition, the recovery is an

10

improper double billing for two attorneys charging time to defend Montelongo's deposition. See Lewis, 292 F.Supp.2d at 910 (duplicative efforts are to be avoided). Thus, the Court will strike the January 21, 2008 entry of seven hours for Speights as either false or duplicative. In addition, attending the deposition of Bevins, a named party whose claims were dismissed by the Fifth Circuit, had nothing to do with Montelongo.[6] As neither Powell nor Speights breaks down the time attributable to attending Montelongo's deposition, the Court cuts Powell's request by half to 3.5 hours, representing attendance at the Bevins deposition.

February 5, 2008 represents another duplicative entry. On that date Powell claims six hours preparing for and attending the depositions of Dwyer and Shope, while Speights claims 8.5 hours for those same depositions plus the deposition of Ryan. Of the deponents listed, Montelongo testified that only Shope and possibly Ryan[7] were his supervisors. (Docket no. 127, ex. A at 15, 113.) Dwyer never supervised Montelongo. Id. at 113. Powell examined Shope; Speights merely observed. Id., ex. B at 4, 5. Therefore, the deposition of Dwyer is irrelevant to Montelongo's case, and the deposition of Shope is duplicative. Further, neither Powell nor Speights state how Shope's deposition is related to Montelongo's claim. The Fifth Circuit did not cite any of Shope's testimony for reversing summary judgment, thus there is no indication that the Shope deposition advanced Montelongo's claims. Speights alone is listed as deposing Ryan.

---

[6] The Fifth Circuit addressed the claims of each plaintiff individually because it found that "the details surrounding each of their claims vary in significant ways, such that few if any of the appellants are 'similarly situated' for the purposes of the FLSA." VonFriewalde, 339 Fed. Appx. at 456.

[7] Montelongo indicated in his deposition that a "Mr. Rayan" had supervised him at some point. As the Court has not encountered any previous mention of a "Mr. Rayan," it is willing to extend the benefit of the doubt and view this as a typographical error on the part of the court reporter that should read "Ryan."

Ryan's only testimony noted by the Fifth Circuit was his statement that supervisors would always authorize overtime when their employees requested it but that employees would often work several minutes past their shifts without asking for overtime. Von Friewalde, 339 Fed.Appx. at 458. As it is thus not clear that any of these depositions advanced Montelongo's claims, nor have Powell and Speights broken down the hours spent on the individual depositions in any event, the Court will strike the six hours claimed by Powell and the 8.5 hours claimed by Speights.

Another duplicative entry is for March 29, 2009 when both Powell and Speights bill 4.5 hours for "Travel to and from Austin and attend meeting to prepare for Oral Argument before Fifth Circuit." Russ was the appellate attorney and was the one who actually argued the case before the Fifth Circuit. Russ billed 6.9 hours on March 29 for the meeting with Powell and Speights, in addition to charges for traveling to Austin "for Oral Argument at UT Law"; reviewing briefs, record and case law; and "go to law school and locate Courtroom." This was apparently a pre-argument meeting; the actual oral argument occurred the next day.

It is appropriate for the appellate attorney to confer with his co-counsel, however a 4.5 hour face-to-face meeting between the three of them is excessive and duplicative, especially since billing records show that the three lawyers had conferred prior to this meeting and that Powell had already billed four hours and Speights 2.5 hours for reviewing the draft of the appellants' brief. Powell, in fact, seeks compensation for 2.5 of these hours in the amended application. The Court will strike Speights' 4.5 hour request for this meeting as duplicative, and two hours from Powell's billing as excessive since he has offered nothing to justify a 4.5 hour pre-argument strategy session. See Lewis, 292 F.Supp.2d at 910 (two attorneys' preparation for and attendance at mediation were "duplicative efforts that should have been avoided," excluding

hours for the lower-billing attorney); In Re Mullins, 84 F.3d 459, 467 (D.C. Cir. 1996) ("Three attorneys bill 2.5 hours each for attending a meeting together and, to avoid reimbursement for duplication of effort, we will deduct the fees incurred by the two lowest-billing attorneys.").

These entries are part a disturbing pattern of identical, duplicative entries on the part of Powell and Speights that began in their original application. An examination of their billing records reveals that the two attorneys double-billed nearly every action taken by either of them. Many of these are set out in Boeing's response to the original application where Boeing concludes that a comparison of Powell's and Speights' fee statements "shows identical entries on the exact same dates for both the description of the work done and the hours spent in every single instance except six." (Docket no. 118 at 12-15.) The amended application eliminates many of the duplicative entries. For instance, in their original application, both Powell and Speights claimed 6.5 hours on 3/15/06 for "Draft Boeing FLSA Original Complaint." (Docket no. 98, exs. A & B.) Now only Powell claims the charge. Amended Application (docket no. 126 at 2). In their original application, both claimed one hour on 3/17/06 for "Oversight of filing of FLSA Original Complaint." Now only Speights claims the charge.[8] In fact, *every* item claimed by either Powell or Speights in the amended application, save one,[9] was claimed by both of them in identical entries in the original application. It is amazing how all but one of these tasks originally took the efforts of both these attorneys to accomplish, but now only one attorney claims credit for the

---

[8] Speights erroneously claims 2 hours for this task in the amended application, but a comparison of his billing records in the original application clearly shows a one-hour charge. Therefore, an additional hour will be deducted from Speights' total hours.

[9] The lone charge is Powell's one-hour claim on 10/20/08 for "Review draft of Appellant's Reply Brief." That is the only claim in the amended application that was not duplicated in the original application by Speights.

13

work. However, as discussed above, even the amended application failed to eliminate the excessive double-billing. This type of churning should not be rewarded. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. Saizan, 448 F.3d at 799; Walker, 313 F.3d at 251. A further percentage reduction will not be made, however, since the Court has already eliminated the duplicative billings in the amended application.

In sum, the Court has struck 11.5 of Powell's hours, leaving a total of 28 hours, and 21 of Speights' 42 hours leaving 21 hours. Thus, the lodestar for Powell is 28 hours at $192 per hour for a total of $5376. For Speights the lodestar is $192 times 21, which equals $4032.

b. Russ. Russ, as stated, only became involved in the case at the appellate stage. Russ reduced his claim for attorney's fees in the amended application from 110.8 hours to 81.7 hours, a reduction of 29.1 hours or 26 percent, to reflect the hours he attributes to Montelongo. Russ's efforts proved successful on appeal only for Montelongo and Lozano out of the 80 plaintiffs. It is certainly impossible to break down his efforts relating solely to Montelongo on an hour-by-hour basis.

Again, of the 80 plaintiffs before the Fifth Circuit, the claims of 75 failed because they presented no evidence. This, of course, was not Russ's fault; the record was what it was. That left five plaintiffs, including Montelongo, who had arguments to present and that the circuit court actually considered. Thus the Court finds that 20 percent of Russ's appellate hours are reasonably attributable to his successful efforts on Montelongo's behalf. Twenty percent of the 81.7 appellate hours totals 16.3 hours.

Russ also submitted charges for 15.6 hours of work following the Fifth Circuit's decision.

14

On 11/14/09 is an entry reading "Motion to Realign Parties and for Leave to File Amended Complaint; draft Amended Complaint, review Eisenstat [Boeing's attorney] response to our claim for unpaid time." The entry for 11/16/09 reads: "Review depositions in Boeing, draft response to Eisenstat." These matters are directly related to plaintiffs' baseless attempt, following the Fifth Circuit decision, to begin this case anew with new notices and a new set of opt-in plaintiffs. This Court found that the Fifth Circuit's mandate was clear— the case was remanded solely for trial of Montelongo's and Lozano's claims and not to give the plaintiffs another bite at the apple. (Docket no. 125.) The Court finds that these efforts were not reasonable or necessary and certainly did not serve to advance Montelongo's claim for unpaid overtime. The 6.3 hours of these entries will be struck.

Part of Russ's entry for 11/20/09 states: "receipt and review of Lozano declaration; Prepare and file Acceptance of Offer of Judgment." Obviously, the Lozano declaration does not relate to Montelongo. Further, Montelongo accepted the offer of judgment on November 19, 2009, so it is not known to what offer of judgment the November 20 entry refers. Again, because Russ left no clue as to how he considered these 3.3 hours relate to Montelongo, the Court is left to speculate. Because it is movant's burden to justify the claim for attorney's fees, the Court strikes this 3.3 hour request.

On 11/30/09, in addition to attorney's fees matters, Russ includes an entry: "draft additional and revise Request for Admissions." A total of 3.9 hours is charged. The Court granted Boeing's request for protective order against these requests for admissions and other post-appeal discovery propounded by plaintiff. (Docket no. 125.) This work has no relation to Montelongo, who had already accepted the offer of judgment when the work was done. The

15

Court will also strike this request.

The Court has struck a total of 13.5 hours from Russ's post-appeal hours, leaving 2.1 hours. When these 2.1 hours are added to the 16.3 appellate hours, the Court finds the reasonable hours spent on this case by Russ on behalf of Montelongo is 18.4 hours. Multiplying these hours by the hourly rate of $247, the lodestar for Russ is $4544.80.

## B. Degree of success

As indicated, the degree of success is the most important factor in assessing an attorney's fee. Russ achieved success for Montelongo on appeal. The Court will not further adjust his lodestar of $4544.80. Powell and Speights present a different case. By any standard, Montelongo's success can only be described as meager. Montelongo prevailed, not by proving his case, but by accepting Boeing's $4000 offer of judgment. To this day the plaintiffs have yet to *prove* any wrongdoing on the part of Boeing. While Montelongo may have enjoyed some modicum of success, the litigation as a whole can be regarded as nothing more than an abject failure. Plaintiffs dropped two of their three original claims. Sixteen hundred notices produced only 76 opt-in plaintiffs. Of the 80 plaintiffs, the claims of 75 failed for the simple reason that plaintiffs produced absolutely *no evidence* in support of their claims. Three more failed because their evidence was *insufficient* to raise a fact issue on summary judgment. One plaintiff, Montelongo, "succeeded" because he accepted a settlement offer, although that offer did not contain an admission of liability. The claims of the only remaining plaintiff, Lozano, have yet to be determined, but even under his own calculations (which Boeing disputes) his unpaid overtime amounts to only $10,000. (Docket no. 127, ex. C.) Given the lack of evidence presented at summary judgment and before the circuit court, it appears that Montelongo succeeded despite

Powell's and Speights' efforts rather than because of them. In fact, Montelongo never quantified his damages until October, 2009, following remand of the case, at which time his claims were rapidly settled.

The minute level of success so far achieved requires a further reduction of the lodestar for Powell and Speights by an additional 50 percent. Consequently, the lodestar for Powell is $2688 and for Speights is $2016.

The Court reiterates that the only reason for this lengthy consideration of *any* attorneys' fees at all is due to Montelongo's acceptance of the $4000 offer of judgment. It further appears from the record that Boeing's offer was made solely in an effort to avoid the expense of litigating the meager amount of damages involved. Without this limited "success," plaintiffs would be entitled to no attorneys' fees whatsoever. See 29 U.S.C. § 216(b) (*successful* FLSA plaintiff entitled to reasonable attorney's fee). To fail to reduce the lodestar to reflect the lack of success in this case would encourage over-preparation and over-billing (including double-billing) for cases that are easily pursued and could be quickly settled, and would create a perverse incentive encouraging lawyers to pursue their own financial interests rather than those of their clients. The FLSA is not a vehicle for generating attorneys' fees.

### C. Remaining Johnson factors

Once the lodestar is calculated, the Court considers the Johnson factors to determine whether an decrease or increase in the amount is warranted. The Court has already considered most of the Johnson factors in its foregoing analysis, including those to which it is required to pay "special heed"— the time and labor involved, the customary fee, the amount in controversy and results obtained, and the experience, reputation and ability of counsel. Von Clark, 916 F.2d

at 258. Although all twelve <u>Johnson</u> factors must be considered, the "<u>Johnson</u> criteria should be applied flexibly, not as a requirement that district courts parrot the twelve factors." <u>Gulf Union Indus., Inc. v. Formation Sec., Inc.</u>, 842 F.2d 762, 767 (5th Cir. 1988). The Court will review the remaining factors.

    1. <u>Novelty and difficulty of the question.</u> This was a typical FLSA case for unpaid overtime. The issues involved were neither novel nor difficult.

    2. <u>Skill requisite to perform the legal service.</u> This case did not demand exceptional skills. The Court has already discussed the skills displayed.

    3. <u>Preclusion of other employment and time limitations imposed by the client or the circumstances.</u> Although the attorneys billed a significant amount of time on this case, there is no evidence that the plaintiffs' counsel had to refuse other work. Nor was this a complex case. It should not have caused the lawyers to limit the number of cases they could otherwise handle.

    4. <u>Nature and length of professional relationship with the clients.</u> Plaintiffs have made no statement concerning their relationship with Montelongo beyond this case.

    5. <u>Fixed or contingent fee.</u> The Supreme Court has barred any use of this factor. <u>City of Burlington v. Dague</u>, 505 U.S. 557, 567 (1992); <u>Rutherford v. Harris County</u>, 197 F.3d 173, 193 (5th Cir. 1999).

    6. <u>Undesirability of the case.</u> This case was not an undesirable one.

    7. <u>Awards in similar cases.</u> The Court suspects that the $4000 obtained so far in this FLSA collective action is on the low side.

    These <u>Johnson</u> factors do not require any further adjustment of the lodestar.

## III. Costs

In the amended application, Russ does not seek recovery of any costs. Powell and Speights seek $350 for the filing fee, $450 for the notice of appeal, and $1242.15 for "½ Boeing Depo's." Plaintiffs have not explained the "½ Boeing Depo's" notation, again leaving the Court to speculate. The Court notes that Powell and Speights each paid $1242.15 in separate checks to "Koole Court Reporter." (Docket no. 98, ex. A at App. 10, ex. B at App. 24.) Powell's check contains only the notation "Boeing." Speights' check notes two invoices from Koole for the depositions of Hatcher, Morales, Shope, Dwyer, and Ryan. Id. at App. 26-27. Half of the amounts billed for these two invoices is $1242.15, so apparently Powell and Speights split these bills. The Court has already discussed the depositions of Shope, Dwyer, and Ryan and has struck the attorneys' fees claimed for these depositions. Plaintiffs' attorneys do not explain the significance of the Hatcher and Morales depositions to Montelongo's claims. Wallace Hatcher and Jesus Morales are Boeing managers. Von Friewalde, 339 Fed.Appx. at 458. Montelongo did not work for Hatcher, but he did at one point work for Morales. (Docket no. 127 ex. A at 113.) The Fifth Circuit noted that "all of Boeing's managers who were deposed testified that they always paid overtime when it was pre-authorized or when an employee informed them that he or she had worked extra time." Id., at 458. Montelongo was a mechanic. Id. at 457. Morales testified in his deposition that it was sometimes impossible for mechanics to stop work with enough time to clean up before their shifts ended, that he would always authorize overtime when employees requested it, and that he believed most employees thought it was too much trouble to seek overtime authorization for a few minutes of extra work. Id. at 458. Thus, Morales's testimony would only support a finding that *de minimis* amounts of overtime were worked but

19

not claimed by Boeing employees. *De minimis* amounts of overtime are non-compensable as a matter of law. Id. Montelongo, on the other hand, was able to prevail on appeal because, unlike the other appellants, he claimed to have worked overtime that rose above the *de minimis* threshold. Id. at 460. Furthermore, he testified that he performed overtime work at his managers' request and notified them when he was not paid. Id. Therefore, his managers were aware that he was working overtime. Id. Morales's testimony did not serve to advance Montelongo's claim, and even if the Court were inclined to award costs for Morales' deposition, Montelongo's attorneys have failed to break out the cost of Morales' deposition from the Koole invoices. However, the $800 paid for the filing fee and notice of appeal are chargeable costs.

Montelongo's amended application for fees (docket no. 126) is GRANTED IN PART as set out above. The Court finds that plaintiff is entitled to $800 in costs and $9248.80 in attorneys' fees, broken down as follows: $2688 for Powell, $2016 for Speights, and $4544.80 for Russ. The Court will enter judgment for Montelongo in a separate document based on his acceptance of the offer of judgment and the fees and costs discussed in this order.

SIGNED this 25 day of March, 2010.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE